## NEAL v. RAILROAD.

(Filed April 16, 1901.)

RAILROADS—*Right-of-Way—Damages—Personal Injuries.*

> A railroad, by permitting the use of its right-of-way for public travel, does not thereby become liable for an injury to a person, caused by a defect in said right-of-way.

ACTION by Lizzie C. Neal against the Southern Railway Company, heard by Judge *Thos. J. Shaw,* at January (Special) Term, 1900, of McDowell County Superior Court. From a judgment for the defendant, the plaintiff appealed.

*E. J. Justice, Davidson & Jones,* and *J. T. Perkins,* for the plaintiff.

*George F. Bason,* and *A. B. Andrews, Jr.,* for the defendant.

FURCHES, C. J. This is an action to recover damages for injuries caused by the alleged negligence of the defendant.

The town of Marion was also made a party defendant and damages demanded of it for the same injury.

The plaintiff filed the following complaint:

The plaintiff, complaining of the defendants, alleges:

1. That the plaintiff is a resident and citizen of the town of Marion, N. C., McDowell County, and was such at the time of the injury hereinafter complained of.

2. That the defendant, the Southern Railway Company, is a foreign corporation incorporated under the laws of the State of Virginia, doing business in the State of North Carolina as a common carrier, and owning a right-of-way of one hundred feet wide on either side of its railroad track in the town of Marion, N. C., at the point where the injury hereinafter occurred.

3. That the said defendant, the Southern Railway Company, has become a domestic corporation of the State of North Carolina by filing a copy of its charter and by-laws as provided by the Acts of the Legislature of North Carolina of 1899, as plaintiff is informed and believes.

4. That the corporation of Marion is incorporated under the laws of North Carolina, Acts 1889, as a municipal corporation with the usual powers and liabilities conferred upon and assumed by such municipal corporations, and the corporate name of Marion is "The Corporation of Marion."

5. That in the town of Marion, N. C., the defendant railway company permits and invites the public to use its right-of-way leading from the Main street in said town at a point in front of the store of J. S. Dysart, and just south of the bridge across the defendant's railroad track in a westerly direction parallel with the said track to a point in the depot yard of the defendant railway company, and then crossing the track to the depot of the said defendant in the town of Marion, N. C.; that by reason of said invitation thus held out to the public, all persons passing between the defendant rail-

way company's depot and the southern part of the town of
Marion, N. C,. have for a long number of years used the
aforesaid portion of the defendant's right-of-way until the
same has become much worn as a passway, and the defendant
railway company, recognizing the right of the public to travel
along this portion of its right-of-way has placed a fence
between said traveled portion of its right-of-way and a cut
through which its track passes in the town of Marion, N. C.,
and the said fence, at the time of the injury hereinafter com-
plained of, and for a long time prior thereto, and at the pres-
ent time, was and is constructed from the corner of the said
bridge parallel with the defendant railway company's track
by the point where the injury hereinafter complained of is
alleged to have occurred, to a point near the said defendant's
depot yard.

6. That in addition to the use to which the defendant rail-
way company had invited the public to subject said portion
of its right-of-way as above alleged, it had permitted the de-
fendant the corporation of Marion to adopt and use its said
right-of-way as a public street and to hold the same out to
the public as a street, and the said corporation of Marion,
without formally condemning said land or accepting the same
in a formal manner, has for ten years used the said portion
of the defendant's right-of-way leading parallel with said de-
fendant railway company's track and over the place where the
injury hereinafter occurred, as a street, causing the same to
be worked and allowing it to be used by the public generally,
and inviting the citizens of Marion to use the same as a street,
holding out that it would be safe to travel it, by working it
and repairing it when it was in need thereof.

7. That the plaintiff, who has for a long number of years
been a citizen and resident of the town of Marion, N. C., has
often traveled said right-of-way, and on or about the 18th
day of January, 1899, she left her home in the town of Ma-

128—— 10

rion, N. C., and went to Virginia, where she remained on a visit until her return on the 11th day of April, 1899. When the plaintiff left the town of Marion as aforesaid on the 18th day of January, 1899, the said portion of the right-of-way was in good condition, free from any defect or hole endangering travelers who used it.

8. That upon the return of the plaintiff as aforesaid to her home in the town of Marion, N. C., at about 12 o'clock at night, she alighted as a passenger from the train of the defendant railway company upon its depot yard where passengers usually alight, and as was her custom, and the custom of all persons when alighting from defendant's train, and going from the said depot yard to any point on Main street or east of Main street on the south side of said railroad track which runs through the said town of Marion, N. C., she crossed defendant's track and went along its right-of-way between the depot yard and the south side of said bridge, until traveling the said well-beaten and worn path so generally used by the public as aforesaid she fell into a hole, seriously injuring herself as follows: by spraining and bruising her left knee and left hip and other portions of her left leg, causing great pain and suffering and a permanent injury to her, preventing her from walking without great pain and suffering, and permanently impairing her ability to support herself, to her great damage, to-wit, in the sum of nineteen hundred and ninety-nine dollars.

9. That at the point where the injury occurred there was a railroad cut at a depth of about twenty feet, the edge of said cut being about thirty feet from the railroad track and about six feet from the path or walk-way along which plaintiff was traveling; and between the said upper edge of the said cut and the said pathway was the fence constructed as aforesaid to prevent persons traveling said pathway from falling in said cut. That the rain had washed under said fence at this

point gradually for the space of a month a deep gulch, the dirt first caving away along the bank of the said cut and between the fence and the track and lodging upon the defendant railway company's right-of-way by the side of its track, and the said excavation gradually increased at each recurring rain until it had washed an excavation across the path which the plaintiff was traveling of a depth of about seven feet, three feet wide at the top and about five feet at the bottom, and extending across the said pathway about three feet and about eight feet into the right-of-way used as a street.

10. That the said excavation remained open and in this unsafe and dangerous condition for a space of several weeks, and this was well known to the defendant railway company, or might by due diligence have been so known, it being almost in plain view of its depot and the route along which its depot agent traveled from his home to the depot, and it being in plain view and only about fifty feet from the section house where the section hands of the defendant company slept when at work on this part of the road. The said excavation could be seen from every train on defendant's road passing this point in the day time, the said excavation being in plain view of the residence of the section master of the defendant railway company having charge of the said defendant company's road-bed and right-of-way at this point.

11. That the dangerous and unsafe condition of the said passway used as a street by the corporation of Marion, N. C., as above alleged, was well known to all the officers of the said corporation, or might have been so known by the exercise of due care.

12. That there were no lights or other means by which plaintiff could discern said excavation at the time of her injury, and nothing placed around said excavation to prevent her from falling into it and being injured.

13. That the injury to the plaintiff was caused by no fault

of hers, but by the gross negligence and carelessness of the defendant railway in failing to repair said passway or stop it up after it had allowed the public to pass over it for so long a time and under the circumstances as above alleged.

14. That the injury to the plaintiff would have been prevented if the defendant, the corporation of Marion, had done its duty, and said injury therefore occurred by reason of the wrongful and negligent conduct of the corporation of Marion in failing to repair the passway before the injury to the plaintiff occurred.

15. That it was the duty of the defendant railway company to have repaired said passway prior to the time the plaintiff was injured.

16. That it was also the duty of the corporation of Marion to have repaired said passway prior to the time the plaintiff was injured. Wherefore, the plaintiff demands judgment against the defendant for the sum of $1,999 and costs, and such other and further relief as to the Court may seem just and proper.

To this complaint the town of Marion answered, and the defendant railroad demurred *ore tenus.*

The action as to the town of Marion was tried at January Term, 1900, of McDowell Superior Court, when the plaintiff recovered a judgment against the defendant town for $500, from which the defendant appealed (see 126 N. C., 412.)

But the Court sustained the defendant's demurrer and the plaintiff appealed, and the plaintiff's complaint, the defendant's demurrer and the ruling of the Court thereon constitute the case now under consideration.

The complaint shows that the injury complained of was received by the plaintiff's falling into a hole in one of the streets of Marion, and that this street was parallel with the defendant's railroad. But it does not state how far it was from the defendant's depot to the place where the injury was received.

It does state that there was a deep cut or excavation opposite the point where the plaintiff was injured, but this was guarded by a fence, and it is not alleged that plaintiff was injured by reason of this excavation, but by falling in a hole washed out in one of the streets of Marion.

While it is alleged that people had for years, and before the town of Marion erected it into a street had been in the habit of passing along that way, going to the defendant's depot, and defendant had not objected to their doing so, but there is nothing alleged to show that defendant has ever opened this as a means of approach to its depot.

The road was not the owner of the land upon which this street was located and where the plaintiff was injured. It only had an easement for the benefit of the road, which it could only use when necessary for the purposes of the road, or for its protection. *Railroad v. Sturgeon,* 120 N. C., 225. It is not the duty of the defendant to open up and keep in repair roads along its railroad track, though it had an easement of 100 feet on either side of said track for the purposes stated above, but only to the approaches to its depot. And we do not understand this to mean roads leading to and traveled by parties going to and from the defendant's depot. We therefore see no obligation resting upon the defendant to make or keep a road where the plaintiff was injured, and there could be no negligence in not doing so.

But most certainly this was so after the town of Marion had erected it into a public street and had been working and repairing it, as such, for the last ten years.

The plaintiff having failed to state a cause of action against the defendant railroad, the judgment is

Affirmed.